DOUGLASS (BARTLEMAN v.). See Case No. 1,073.

DOUGLASS (BLACKINTON v.). See Case No. 1,470.

---

## Case No. 4,032.

### DOUGLASS v. EYRE.

[Gilp. 147.][1]

District Court, E. D. Pennsylvania. Jan. 8, 1830.

SEAMEN'S WAGES—FORFEITURE—INTERPRETATION OF SHIPPING ARTICLES—CHANGE OF VOYAGE—LOG BOOK ENTRIES AS EVIDENCE.

1. The word "or" has sometimes been construed to mean "and," when such construction has been clearly necessary to give effect to a clause in a will, or to some legislative provision, but never to change a contract at pleasure.

[Cited in Smith v. Hammond, Case No. 13,053.]

2. Shipping articles for a voyage "from Philadelphia to Gibraltar, other ports in Europe, or South America, and back to Philadelphia," au-

[1] [Reported by Henry D. Gilpin, Esq.]

thorise a voyage directly from Gibraltar to South America, without proceeding to any intermediate European port, but not a return afterwards from there to a European port.

[Cited in The Brutus, Case No. 2,060.]

3. A change of a voyage from that specified in the shipping articles, must be actually resolved on and known to a seaman, to authorise him to leave a vessel without forfeiting his wages.

4. An entry in the log book is prima facie evidence of its truth in every particular, and to be falsified, must be disproved by satisfactory evidence.

[Cited in The Lilian M. Vigus, Case No. 8,346.]

Mr. Grinnell, for libellant.

J. R. Ingersoll, for respondent.

HOPKINSON, District Judge. The libellant states that on the 9th April, 1828, he shipped as second mate on board of the brig Independence, then owned by Franklin Eyre, at the wages of thirteen dollars a month, on a voyage from the port of Philadelphia to Gibraltar, thence to a port or ports in Europe, or to a port in the Brazils, and thence back to the said port of Philadelphia. The libellant avers that he proceeded in the brig, on the said voyage, to Gibraltar, and thence to Pernambuco, faithfully performing his duty until the time of his leaving the brig. He continued on board the brig at Pernambuco until the 31st October, 1828, when he left her; the voyage for which he shipped, being changed, and the said brig ordered for the port of Trieste, for which she afterwards sailed, as the libellant has heard and believes. He avers that when he left the brig, there was due to him for wages as aforesaid ninety-four dollars and seventy-two cents. He further states that he left Pernambuco on or about the 30th November, 1828, and arrived at New York on the 30th December, 1828, and at Philadelphia on the 31st. The libel was filed on the 16th April, 1829.

The voyage described in the articles is, "from Philadelphia to Gibraltar, other ports in Europe, or South America, and back to Philadelphia." The first question arises on the true construction and meaning of this part of the contract. The libellant contends that the vessel should have returned directly from Gibraltar to Philadelphia, or should have gone from Gibraltar to other port or ports in Europe, and thence back to Philadelphia; but had no right to go to South America. I can see no reason to justify this construction. It would be entirely to erase or reject from the articles, the words, "or South America." Whether, if after leaving Gibraltar she had gone to another port in Europe, she could afterwards have proceeded to South America, is another question which does not occur, as she went directly from Gibraltar to Pernambuco. On the other hand, it is contended by the respondent, that, under these articles, the brig, after leaving Gibraltar, had full liberty to go to other ports in Europe, and then to South America, or to go first to South America and back to ports in Europe, terminating the voyage at Philadelphia. To maintain this construction, it is necessary to change one word in the contract, or at least to change its ordinary signification; that is, to construe the word "or" to mean "and." Cases have been alluded to, in which this has been done. "Or" is a disjunctive particle; in its ordinary signification it corresponds to "either," meaning one or the other of two, but not both. If this meaning be taken from it, I know of no other word in our language to supply it. It is true that this word has sometimes been construed to mean "and," when this was clearly necessary to give effect to some clause in a will, or some legislative provision. In such cases it has been forced out of its proper meaning to effect these purposes; but never to change a contract at pleasure. Indeed it seems to be an inaccurate expression to say that "or" can ever mean "and." It should rather be said, that, for strong reasons, and in conformity with a clear intention, "or" has been changed or removed, and "and" substituted in its place. I do not agree with the respondent in his construction of the description of the voyage in these articles. I understand them to mean, that the brig was to sail from Philadelphia to Gibraltar; when there, the captain had his option to go to other ports in Europe, and return to Philadelphia; or to go to South America, and from thence to return to Philadelphia; but having made his election he is bound by it; that is, if from Gibraltar he had gone to another port in Europe, he could not afterwards have gone to South America; or having made his choice to go from Gibraltar to South America, he had surrendered his right to go again to Europe, and was bound to return from South America to Philadelphia. Whether he might have visited other, and how many ports in South America besides Pernambuco, it is not necessary to inquire.

The contract of the parties being thus settled, we proceed to the facts of the case, out of which the controversy has arisen. When this brig sailed from Philadelphia, her master was Joseph M. Douglass, the brother of the libellant. The brig remained but two or three weeks at Gibraltar. She sailed from thence for Pernambuco, where she arrived on the 1st July. From some causes of discontent, not fully explained, nor material, her master left her about the last of August. Her command or direction was assumed by the supercargo, William Fennell. She remained at Pernambuco until the 29th January, 1829, when she sailed for Trieste. On the 31st October, 1828, the libellant left the vessel, without the leave and against the orders of her officer; he remained at Pernambuco, without returning to the vessel for about a month; he then sailed for New York. The following entry is made in the log book: "31st October, 1828. George Douglass left the brig of his own accord," which the counsel for the

libellant admits is a sufficient averment that he left the brig without the leave of the master.

This desertion of the brig by the libellant, and abandonment of his duty, are relied upon by the respondent as forfeiting all the wages then due, and two questions have been made in the case. 1. Whether such a justification is shown by the libellant for leaving the brig as saves the forfeiture and entitles him to his wages. 2. Whether the proof offered of the desertion is sufficient, under the act of congress, to give the respondent the benefit of it. The justification set forth by the libellant, in the libel, is stated thus; that "he continued on board the said brigantine, at the port of Pernambuco, till the 31st October, in the year aforesaid, when the libellant left the said brigantine, the voyage for which the libellant shipped being changed, and the said brigantine ordered for the port of Trieste." This is the allegation; but how is the proof? Is it true that on the 31st October the voyage was changed, and the brig ordered for Trieste? The very reverse of this is proved by two uncontradicted witnesses. No determination to go to Trieste was made until about the 1st January, 1829; nor was the voyage changed until the 29th January, when the brig sailed for that port. It is therefore impossible to doubt that this justification is a mere after thought, untrue in point of fact, when the libellant left the vessel, and forming no part of his reason or motive for abandoning his duty.

He has endeavoured to prove some rumours on shore, that the vessel was going to Trieste, and some absurd talk on board the brig, that she was going to Jerusalem; but there was nothing in the proceedings, the orders, or the declarations of any of the officers of the vessel, to countenance the pretence. When Douglass left the brig, she had no cargo in; but on that day took a few barrels of sugar on board. If a seaman is to be justified in leaving his ship and his duty, in a foreign port, on such pretences and rumours, they will never be wanting. He made no inquiries of the officers respecting these reports or their intentions. The sincerity of this excuse is wholly destroyed by the testimony of the libellant's own witnesses. They have testified that two or three weeks after the libellant's brother, who had been the master, left the brig, they heard libellant talk of leaving her. He gave no reason, but that he did not like the living on board. This was before the rumour of a change of the voyage, which came from two foreign seamen who had been shipped. Again; the libellant made repeated applications to William Fennell for a discharge, sometimes in a rude and insolent manner, as if he would provoke him to it, but never mentioning the change of the voyage as his reason. In short, he left Pernambuco, after loitering there for a month, several weeks before any intention was taken or manifested to go to Trieste, and while it was altogether uncertain whether she would not come directly to Philadelphia from Pernambuco. Surely the brig had a right to his services while she remained at Pernambuco, and it was time enough for him to leave her, and claim his discharge, when she was about to sail for an unauthorised port. He arrived at this port in December, 1828, and made no claim upon the owner, who resided here, for wages, under an apparent consciousness that he had forfeited them. In April, however, when he may have heard the brig had actually gone from South America to Trieste, he files his libel, and sets up this change of the voyage as the justification of his desertion, and to relieve himself from the consequent forfeiture of his wages. I think the libellant has wholly failed in justifying his desertion of the brig at Pernambuco, and that he has thereby forfeited his wages, provided the proof of his desertion has been made out in the manner required by the act of congress. By the fifth section of the act of 20th July, 1790 (1 Story's Laws, 104 [1 Stat. 133]), it is enacted, that if any seaman "shall absent himself from on board the ship or vessel, in which he shall have shipped, without leave of the master, or officer commanding on board; and the mate, or other officer having charge of the log book, shall make an entry therein of the name of such seaman or mariner, on the day on which he shall so absent himself; and if such seaman or mariner shall return to his duty within forty-eight hours, such seaman or mariner shall forfeit three days' pay for every day which he shall so absent himself, to be deducted out of his wages; but if any seaman or mariner shall absent himself for more than forty eight hours at one time, he shall forfeit all the wages due to him, and all his goods and chattels on board the said ship or vessel."

The objection made to the sufficiency of the proof in this case, is, that the entry was not made on the day on which the libellant absented himself. I have found no direct decision of this question, that is, whether, under all circumstances, the entry must be made on the day the seaman leaves the vessel. Certainly much inconvenience may be foreseen from a rigid and literal adherence to the words of the act in this particular; in some circumstances it would be impossible. No case has been produced to support it, and the reasons given for requiring the entry at all, do not require this strict interpretation. An entry in the log book is indispensable evidence of the fact of desertion when a forfeiture is insisted upon. It is necessary in order to show that no release was intended, by receiving the delinquent again on board, as well as to ascertain the fact with greater accuracy. This is the language of the late Judge Peters, in the case of Malone v. Bell [Case No. 8,994]. In the case of The Phoebe v. Dignum [Id. 11,110], Judge Washington says that an absence for more than forty-eight hours, without leave, is a forfeiture of

wages, "provided the officer having charge of the log book shall make an entry therein, of the name of such seaman, on the day on which he shall so absent himself. The reason of this is obvious. If such entry be made, it repels any presumption that such consent took place, or that the forfeiture was intended to be waived. If no such entry be made, it is to be presumed that the absence was not injurious, and was not objected to." When the judge says the entry is to be made, "on the day" the seaman absents himself, he merely recites the words of the act, but does not give any interpretation of them on the point now in issue; nor was it necessary he should, for in the case before him no entry whatever had been made.

Nor do I find myself under the necessity of deciding this question. The evidence of the case makes it sufficiently satisfactory to my judgment, that the entry was duly made, and in conformity with the words of the act. The first evidence is the log book itself. The entry in question purports to be made on the day of the transaction; and it is fair, without any appearance of alteration, obliteration, or falsehood. The entries, before and after this one, all appear in regular order according to their dates; and they must also be false as to the time of making them, if this is. We agree, however, that although the entry in the log book is indispensable evidence under the act of congress, it is not conclusive, and may be disproved by other testimony. Has this been done in this case? John Smith, the first mate of the brig, says that he made this entry, and kept the book; that it was his duty to take notice of it, when any man left the vessel; that it was his usage to make the entries of every day on the days they bear date, unless prevented by some extraordinary circumstances, in which cases they were sometimes made one or two days after. On being very closely pressed, he did say, that he could not say positively whether this entry was made on the day or not: but, in the beginning of his evidence, he distinctly said that he believed the entry was made at the time it bears date. We know that the vessel was lying quietly in port, with no press of business on the mate, nor any extraordinary circumstance that should have compelled or induced him to depart from his custom of making his entries every day. Why then should we not presume it to have been done? But I hold the entry itself to be prima facie evidence of its truth in every particular; and to be falsified it must be disproved by satisfactory evidence. There is no such evidence here. The mate speaks with the caution a conscientious witness would use, about a fact which occurred more than a year ago; and about which there could not be an absolute, infallible certainty. The log book is so far from being disproved by his evidence, that it receives a reasonable confirmation from it. Upon the whole, it is my opinion, that the libellant has forfeited

his wages by his desertion from the brig at Pernambuco; and that the desertion has been fully proved according to the provisions of the act of congress.

Decree: That the libel be dismissed with costs.